IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| PATRICK JORDAN and<br>DAVID GALVAN,<br><br>Plaintiffs,<br><br>v.<br><br>DOUGLAS COUNTY SCHOOL<br>DISTRICT NO. 1, a/k/a OMAHA<br>PUBLIC SCHOOLS,<br><br>Defendant. | CASE NO. 8:07CV385<br><br><br>MEMORANDUM<br>AND ORDER |

This matter is before the Court on two Motions for Summary Judgment filed by Defendant Douglas County School District No. 1, a/k/a Omaha Public Schools ("OPS"), relating to Plaintiff David Galvan's claims (Filing No. 29), and Plaintiff Patrick Jordan's claims (Filing No. 32). The Court will dismiss all claims presented by Galvan, and will dismiss Jordan's age, sex, and race discrimination claims, but will reserve judgment on Jordan's constitutional claims regarding his alleged protected speech.

OPS has requested oral argument (Filing No. 35) to address issues related to Jordan's protected speech claim, and the Court will grant that request.

## BACKGROUND

### 1. Procedural Background

On September 25, 2007, Galvan and Jordan filed a joint Complaint alleging that OPS's decision to terminate their employment violated their constitutional rights under the First and Fourteenth Amendments, 42 U.S.C. § 1983, and other "applicable law." (Filing No. 1). On December 27, 2007, Plaintiffs amended their complaint. (Filing No. 3). In the Amended Complaint, Galvan alleged that OPS's termination of his employment was

motivated by his age, sex, and/or race, "in violation of applicable law."[1] (Filing No. 3 at ¶¶ 31-32).  Galvan further alleged that OPS violated his rights "secured under the 1st and 14th Amendments to the United States Constitution and 42 U.S.C. § 1983" because OPS's decision to terminate his employment was in response to his protected speech regarding matters of public concern. (Filing No. 3 at ¶ 26).  Jordan similarly alleged that OPS's termination of his employment was unlawfully motivated by his age, sex, and/or race.[2] (Filing No. 3 at ¶ 28).  Finally, Jordan alleged that he engaged in protected speech regarding matters of public concern and OPS's decision to terminate his employment was unlawfully motivated by his protected speech, in violation of his rights under the First and Fourteenth Amendments and 42 U.S.C. § 1983. (Filing No. 3 at ¶ 23).

On October 27, 2008, OPS moved for summary judgment.  OPS argued that Galvan abandoned his protected speech claim, and failed to establish a *prima facie* case of age, sex, or race discrimination under Title VII or the ADEA.  (*See* Filings Nos. 30-31). OPS argued that Jordan failed to demonstrate that his speech was protected or addressed any matter of public concern, and that Jordan abandoned his claims of sex and race discrimination and failed to establish a *prima facie* case of age discrimination. (*See* Filings Nos. 33-34).

---

[1] While Galvan listed no specific law to substantiate these causes of action, the Court has interpreted his phrase "applicable law" as referring to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2(a)(1) ("Title VII") and the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. §§ 621- 634.

[2] Jordan also alleged that OPS discriminated against him "in violation of applicable law." (Filing No. 3 at ¶ 28).  The Court has interpreted his phrase "applicable law" as referring to Title VII and the ADEA.

The parties' briefs (Filing Nos. 30, 33, and 44) and evidentiary submissions (Filing Nos. 31 and 34) demonstrate that while the parties disagree on some facts, no *material* facts relating to any of Galvan's claims, or any of Jordan's race, age, or sex discrimination claims, are in dispute, although material facts concerning Jordan's First Amendment claim may remain in dispute. Accordingly, the Court will grant OPS's Request for Oral Argument (Filing No. 35) to address Jordan's First Amendment claim.

## 2.   Undisputed Factual Background[3]

OPS hired Jordan as a Senior System Engineer on May 10, 2004. (Filing No. 34, Ex. A3). Jordan was an "at will" employee. (Filing No. 34, Ex. A6, and Filing No. 31, Ex. A3, Deposition of Dr. Sandra Hodges ("Hodges Dep.") 28:7-29.11). When OPS hired Jordan, he was fifty-three years old, and he was fifty-three years old when OPS terminated his employment. (Filing No. 34, Ex. A1, Deposition of Patrick Jordan ("Jordan Dep.") 8:19-23). OPS hired David Galvan as a Systems Engineer in Information Management Services on June 14, 2004. (Filing No. 31, Ex. A1, Deposition of David Galvan ("Galvan Dep.") 9:11-14 & Ex. A2). Galvan was also an "at will" employee. (Hodges Dep. 28:7-29:11). When OPS hired Galvan, he was forty-two years old, and he was forty-two years old when OPS terminated his employment. (Galvan Dep. 9:17-18 & 9:19-10:2).

On November 3, 2004, Jordan and Galvan went to the office of Dr. Thomas McClung, OPS Executive Director of Information Services, and Jordan presented McClung with a document raising several issues regarding McClung's professional conduct and management of employees, as well as allegations of mis-management of funds in the OPS

---

[3] The Court has construed the facts in a light most favorable to Galvan and Jordan.

3

budget that were allocated for certain contracts. (Filing No. 34, Ex. A12). Specifically, Jordan accused McClung of violating the OPS harassment policy and a rule governing OPS business procedures. (Filing No. 34, Ex. A12). On December 12, 2004, Jordan again raised these issues in an email to an OPS School Board member. (Filing No. 34, Ex. A16). Jordan contends that these acts constituted speech on matters of public concern and deserve First Amendment protection. In his deposition, McClung stated that he viewed Jordan's accusations as "inflammatory" and "incorrect." (Filing No. 34, Ex. A8, Deposition of Dr. Thomas McClung ("McClung Dep.") 111:24-112:11).

Although Galvan attended the meeting with Jordan and McClung, the evidentiary record indicates that Galvan did not speak. In written interrogatories, OPS asked Galvan to "describe in detail each instance where [he] engaged in constitutionally protected activity, i.e., spoke out on a matter of public concern . . ." (Filing No. 31, Ex. A10, Interrogatory No. 3). Galvan responded "non-applicable." (Galvan Dep. 24:9-25:25). When questioned about this response during his deposition, Galvan stated that "the only time [he] spoke out was when [he] thought [his] paycheck was incorrect." (Galvan Dep. 24:9-25:25).

McClung reported his meeting with Jordan to Dr. Sandra Hodges, OPS Assistant Superintendent of Human Resources. (McClung Dep. 64:5-16; 115:8-21). Hodges initiated an investigation, and subsequently informed Jordan that he had "demonstrated extremely poor judgment by presenting the allegations to Dr. McClung rather than to his supervisors or to Human Resources . . . Mr. Jordan['s] . . . actions in this matter have been totally unprofessional and unacceptable." (Filing No. 34, Ex. A17). OPS contends that Jordan sought to use his confrontation with McClung to secure the return of another employee

4

whose employment OPS had previously terminated.[4] (Hodges Dep. 115:16-116:4). OPS further contends that its decision to terminate Jordan's employment was based on the improper motive that allegedly underlay Jordan's actions toward McClung. (Hodges Dep. 115:16-116:4). When Hodges concluded her investigation of Jordan, she determined that Jordan's actions were "confrontational" and "threatening." (Hodges Dep. 120:13-121:19). She recommended that the OPS School Board terminate his employment, and on January 19, 2005, the School Board accepted her recommendation and terminated Jordan's employment. (Hodges Dep. 84:3-11).

Following the November 3, 2004, meeting of McClung, Jordan, and Galvan, Hodges also initiated an investigation of Galvan. When interviewed, Galvan claimed that he was only a witness to the meeting between Jordan and McClung. (Hodges Dep. 45:1-46:23). Hodges concluded that Galvan could not "effectively perform [his] assigned duties with the full and unqualified trust and confidence necessary from [his] supervisors in Information Management Services and the District Administration." (Filing No. 31, Ex. A9). Hodges perceived that Galvan lied to her when she investigated Gary Anderson's conduct, and Hodges surmised that Galvan's "credibility was shot." (Hodges Dep. 42:15-44:14; 47:3-16). She was also concerned that Galvan had the technical ability to harm the OPS information systems. (Hodges Dep. 51:15-52:14).

---

[4] OPS alleges that Jordan's confrontation with McClung was motivated by a desire to persuade him to re-hire Gary Anderson. OPS originally hired Anderson as a Technical Support Coordinator in its Information Management Services Department. Anderson's employment was terminated by the OPS Board of Education in January 2005 upon the recommendation of Hodges. This Court dismissed Anderson's claims against OPS in *Anderson v. OPS,* Case No. 8:06CV332. *(See* Case No. 8:06CV332, Filing No. 69).

5

Upon completing her investigation, Hodges recommended that the OPS School Board terminate Galvan's employment (Filing No. 31, Ex. A9), and on January 19, 2005, the OPS School Board adopted her recommendation and terminated his employment. (Hodges Dep. 56:4-8).

## STANDARD OF REVIEW

In the context of a summary judgment motion, the Court's function is to consider the evidence and determine whether the moving party is entitled to judgment as a matter of law. The proponent of a motion for summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)). In response to the proponent's showing, the opponent's burden is to "come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (quoting Fed. R. Civ. P. 56(e)). A "genuine" issue of material fact is more than "some metaphysical doubt as to the material facts." *Id.*

In considering a motion for summary judgment, a court views the facts in the light most favorable to the nonmoving party, and gives that party the benefit of all reasonable inferences. *McNary v. Schreiber Foods, Inc.*, 535 F.3d 765, 768 (8th Cir. 2008)(ADA); *Fields v. Shelter Mut. Ins. Co.*, 520 F.3d 859, 863 (8th Cir. 2008)(Title VII and 42 U.S.C. § 1981).

## ANALYSIS

In cases where race or sex-based discrimination is alleged, but where the plaintiff has presented no direct evidence of discrimination, the Eighth Circuit Court of Appeals has adopted "the burden-shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973)." *McGinnis v. Union Pacific R.R.*, 496 F.3d 868, 873 (8th Cir. 2007)(applying the *McDonnell Douglas* framework where plaintiff had no direct evidence of sex-based discrimination); *see also Carpenter v. Con-Way Cent. Express, Inc.*, 481 F.3d 611, 616 (8th Cir. 2007)(applying the *McDonnell Douglas* framework where plaintiff had no direct evidence of race-based discrimination). In the present case, neither Jordan nor Galvan has presented any direct evidence to support his claims of race and/or sex-based discrimination. Consequently, the Court will apply the *McDonnell Douglas* framework to evaluate whether Plaintiffs' discrimination claims survive OPS's Motions for Summary Judgment.

To establish a case of sex-based discrimination under the *McDonnell Douglas* framework, "the [Plaintiff] initially must establish a prima facie case, which consists of showing he (1) is within the protected class, (2) was qualified to perform his job, (3) suffered an adverse employment action, and (4) has facts that give rise to an inference of sex discrimination." *McGinnis*, 496 F.3d at 874.

Similarly, "[t]o meet his burden of showing a *prima facie* case of [race-based] discrimination under Title VII, a plaintiff must show (1) he is a member of a protected class, (2) he was meeting his employer's legitimate job expectations, (3) he suffered an adverse employment action, and (4) 'similarly situated employees outside the protected class were treated differently.'" *Carpenter*, 481 F.3d at 616.

The Eighth Circuit Court of Appeals has also applied the *McDonnell Douglas* framework to age discrimination cases where the plaintiff has no direct evidence of age discrimination. *Rothmeier v. Investment Advisers, Inc.*, 85 F.3d 1328, 1332 (8th Cir. 1996)("In disparate-treatment cases based on circumstantial evidence, courts apply the now-familiar analytical framework of burden shifting developed in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973)). "Consequently, the rule in this Circuit is that an age-discrimination plaintiff can avoid summary judgment only if the evidence considered in its entirety (1) creates a fact issue as to whether the employer's proffered reasons are pretextual and (2) creates a reasonable inference that age was a determinative factor in the adverse employment decision." *Id.* at 1336-37.

For the reasons outlined below, the Plaintiffs' race, sex, and age discrimination claims do not survive OPS's Motions for Summary Judgment because they have not established a *prima facie* case under the *McDonnell Douglas* framework.

### 1.   Galvan's Claim of Sex-Based Discrimination

Galvan has failed to establish a *prima facie* case of sex-based discrimination because he has presented no "facts that give rise to an inference of sex discrimination." *McGinnis*, 496 F.3d at 874 (8th Cir. 2007). He has demonstrated no factual "circumstances that would permit the court to infer that unlawful discrimination had been at work." *Habib v. NationsBank*, 279 F.3d 563, 566 (8th Cir. 2001). Consequently, Galvan has not satisfied his burden under the *McDonnell Douglas* framework.

Galvan contends that OPS's reasons for terminating his employment were pretextual, and therefore "a jury could conclude the firing was impermissibly based upon . . . sexual bias." (Plaintiff's Brief, Filing No. 44). Such an allegation does not constitute

evidence from which a finder of fact could "infer that unlawful discrimination had been at work." *Habib*, 279 F.3d at 566.

A claim that a defendant's proffered reasons for its adverse employment action are pretextual does not satisfy a plaintiff's initial burden of establishing a *prima facie* case of discrimination. Under the *McDonnell Douglas* framework, a plaintiff is *first* obligated to establish a *prima facie* case. *McGinnis*, 496 F.3d at 874. Once the plaintiff has established a prima facie case of discrimination, and after the defendant has offered an alternative reason for its adverse employment action, *then* the plaintiff must "demonstrate that the reasons offered by h[is] employer [a]re mere pretexts for discrimination." *Habib*, 279 F.3d at 566. Even if Galvan could establish that OPS's stated reasons for his termination were false, he has presented no evidence from which a finder of fact could infer that OPS considered Galvan's sex in its decision to terminate his employment. Accordingly, the Court will dismiss Galvan's claim of sex-discrimination.

### 2. Galvan's Claim of Race-Based Discrimination

For similar reasons, Galvan's claim of race-based discrimination does not survive OPS' Motion for Summary Judgment. Galvan claims that OPS's termination of his employment constituted race-based discrimination because he is Hispanic. However, Galvan has not established a *prima facie* case because he has presented no evidence that "similarly situated employees outside the protected class were treated differently" by OPS. *Carpenter*, 481 F.3d at 616. Instead, the evidence that Galvan has presented demonstrates that two men outside of the protected class were treated in the exact same manner as Galvan. Specifically, within the same time period, OPS terminated the employment of both Gary Anderson and Patrick Jordan, individuals who are outside of the

protected class – but worked in the same OPS department. Thus the evidence indicates that similarly situated employees outside the protected class were *not* treated differently. Galvan has failed to satisfy his burden of establishing a *prima facie* case and the Court will dismiss his claim of race-based discrimination.

### 3. Galvan's Claim of Age-Based Discrimination

Galvan has also failed to establish a *prima facie* case of age-based discrimination. He has presented no evidence to "creat[e] a reasonable inference that age was a determinative factor in the adverse employment decision." *Rothmeier*, 85 F.3d at 1336-37. Even viewing the evidence in a light most favorable to Galvan, his evidence is insufficient, as a matter of law, to allow this Court to infer that OPS's termination of his employment was motivated by his age.

While it is clear from the record that a conflict arose between McClung and Galvan as a result of their November 3, 2004, meeting, that conflict alone does not give rise to an inference of age discrimination under the ADEA. Further, the fact that OPS hired Galvan when he was forty-two and fired him when he was forty-two "run[s] counter to any reasonable inference of discrimination based on age." *Id.* at 1337. Because the Court cannot reasonably infer any discrimination based on age, Galvan has failed to establish a *prima facie* case of age discrimination, and the Court will dismiss Galvan's age discrimination claim.

### 4. Galvan's Claims under the First and Fourteenth Amendments and 42 U.S.C. § 1983

Galvan's protected-speech claim is predicated on his having committed an act of speech; Galvan contends, however, that he did not. With no act of speech deserving of

constitutional protection, there is nothing further for the Court to adjudicate in this matter.[5]

While Galvan did attend the meeting between Jordan and McClung, the evidentiary record indicates that he was merely a witness. In written interrogatories, OPS asked Galvan to "describe in detail each instance where [he] engaged in constitutionally protected activity, i.e., spoke out on a matter of public concern . . ." (Filing No. 31, Ex. A10, Interrogatory No. 3). To this Galvan responded "non-applicable." (Filing No. 31, Ex. A1, Galvan Dep. 24:9-25:25). When questioned about this response during his deposition, Galvan stated that "the only time [he] spoke out was when [he] thought [his] paycheck was incorrect." (Filing No. 31, Ex. A1, Galvan Dep. 24:9-25:25). This sort of speech does "not addres[s any] matters of public concern," and therefore, does not "trigger constitutional

---

[5] The Court recognizes that the First Amendment also protects nonverbal "speech" that is symbolic in nature. *Rumsfeld v. Forum for Academic and Institutional Rights, Inc.*, 547 U.S. 47, 65, (2006)("[S]ome forms of 'symbolic speech' were deserving of First Amendment protection."); *Texas v. Johnson*, 491 U.S. 397, 404 (1989)("The First Amendment literally forbids the abridgment only of speech, but we have long recognized that its protection does not end at the spoken or written word. While we have rejected the view that an apparently limitless variety of conduct can be labeled speech whenever the person engaging in the conduct intends thereby to express an idea, we have acknowledged that conduct may be sufficiently imbued with elements of communication to fall within the scope of the First and Fourteenth Amendments.")(internal quotations and citations omitted). The Court concludes, however, that Galvan's presence at the meeting between McClung and Jordan did not constitute symbolic speech, because Galvan himself has stated he did not engage in any constitutionally protected speech. Had Galvan alleged that his presence at the meeting was symbolic speech, or that he suffered an adverse employment action for aiding someone else in the exercise of protected speech on a matter of public concern, then this Court would have weighed such arguments.

protection." *Lindsey v. City of Orrick, Mo.*, 491 F.3d 892, 897 (8th Cir. 2007)(citing *Garcetti v. Ceballos,* 547 U.S. 410 (2006).

Accordingly, the Court will dismiss Galvan's claims of constitutional violations under the First and Fourteenth Amendments and 42 U.S.C. § 1983.

### 5. Jordan's Claims of Race and/or Sex-based Discrimination

In his deposition, Jordan stated that he did not contend that his race or his sex were factors in OPS's decision to terminate his employment. (Filing No. 34, Ex. AI, Jordan Dep. 121:21-122:2). While he maintained that age was a contributing factor, he denied that his race or sex played any role in the termination of his employment. (Filing No. 34, Exh. AI, Jordan Dep. 121:21-122:2).

Because the evidence before the Court demonstrates that Jordan does not believe he was discriminated against based on his race or his sex, he has abandoned these claims and the Court will grant OPS's Motion for Summary Judgment on Jordan's race and sex discrimination claims.

### 6. Jordan's Claim of Age-Based Discrimination

The Court will also grant OPS's Motion for Summary Judgment regarding Jordan's claim of age-based discrimination because Jordan has failed to meet his burden of establishing a *prima facie* case of discrimination. Viewing the evidence in a light most favorable to Jordan, his evidence is insufficient, as a matter of law, to allow this Court to infer that OPS's termination of his employment was in any respect motivated by his age. While it is clear from the record that a conflict arose between McClung and Jordan as a result of their November 3, 2004, meeting, that conflict alone does not give rise to a claim based on age discrimination under the ADEA. The fact that OPS hired Jordan when he

was fifty-three and fired him when he was fifty-three "run[s] counter to any reasonable inference of discrimination based on age." *Rothmeier*, 85 F.3d at 1337. Further, in his Response to Defendant's Motion for Summary Judgment (Filing No. 44), Jordan made no statement to counter OPS's allegation that he failed to present a *prima facie* case of age discrimination.

The Court cannot reasonably infer any discrimination by OPS against Jordan based on age; Jordan has failed to establish a *prima facie* case of age-discrimination; and the Court will dismiss his claim of age-based discrimination.

### 7. Jordan's Claims under the First and Fourteenth Amendments and 42 U.S.C. § 1983

The Court will grant OPS's Request for Oral Argument (Filing No. 35), and reserves judgment on its Motion for Summary Judgment regarding this claim until after the hearing.

## CONCLUSION

For all of the aforementioned reasons, the Court grants OPS's Motion for Summary Judgment regarding all Plaintiff Galvan's claims, and grants in part OPS's Motion for Summary Judgment regarding Plaintiff Jordan's claims.

IT IS ORDERED:

1. Defendant Omaha Public Schools' Motion for Summary Judgment (Filing No. 29) is granted, and all Plaintiff David Galvan's claims are dismissed with prejudice;

2. Defendant Omaha Public Schools' Motion for Summary Judgment (Filing No. 32) is granted in part:

    (a).    Plaintiff Patrick Jordan's claims of race, sex, and age discrimination are dismissed with prejudice;

    (b).    The Court reserves judgment regarding Jordan's constitutional claims under the First and Fourteenth Amendments and 42 U.S.C. § 1983;

3. The Court grants Defendant Omaha Public Schools' Request for Oral Argument (Filing No. 35). Court staff will contact the parties' attorneys to schedule the hearing; and

4. The Pre-Trial Conference set before Magistrate Judge Gossett on December 18, 2008, is cancelled, and the parties are instructed to call Magistrate Judge Gossett's chambers within five business days of this Order to reschedule the Pre-Trial Conference.

DATED this 15th day of December, 2008.

                              BY THE COURT:

                              s/Laurie Smith Camp
                              United States District Judge