IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| PATRICK JORDAN, | ) | CASE NO. 8:07CV385 |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | MEMORANDUM |
| | ) | AND ORDER |
| DOUGLAS COUNTY SCHOOL DISTRICT NO. 1, a/k/a OMAHA PUBLIC SCHOOLS, | ) ) ) | |
| | ) | |
| Defendant. | ) | |

This matter is before the Court on the one remaining issue for decision in the Motion for Summary Judgment (Filing No. 32), filed by Defendant Douglas County School District No. 1, a/k/a Omaha Public Schools ("OPS"). The remaining issue concerns Plaintiff Patrick Jordan's First Amendment claim based on protected speech. The Court granted OPS's request for oral argument and, on December 29th, 2008, the Court heard arguments of counsel addressing Jordan's protected-speech claim. Upon review of the record and consideration of the arguments presented, the Court will grant Defendant's Motion for Summary Judgment and dismiss Jordan's First Amendment protected-speech claim, with prejudice.

## BACKGROUND

### 1.  Procedural Background

On September 25, 2007, David Galvan and Patrick Jordan filed a joint Complaint alleging that OPS's decision to terminate their employment violated their constitutional rights under the First and Fourteenth Amendments, 42 U.S.C. § 1983, and other "applicable law." (Filing No. 1). On December 27, 2007, Plaintiffs amended their Complaint. (Filing No. 3). In the Amended Complaint, Galvan alleged that OPS's termination of his

employment was motivated by his age, sex, and/or race, "in violation of applicable law." (Filing No. 3 at ¶¶ 31-32).  Galvan further alleged that OPS violated his rights "secured under the 1st and 14th Amendments to the United States Constitution and 42 U.S.C. § 1983" because OPS's decision to terminate his employment was in response to his protected speech regarding matters of public concern. (Filing No. 3 at ¶ 26). Jordan similarly alleged that OPS's termination of his employment was unlawfully motivated by his age, sex, and/or race. (Filing No. 3 at ¶ 28).  Finally, Jordan alleged that he engaged in protected speech regarding matters of public concern and OPS's decision to terminate his employment was unlawfully motivated by his protected speech, in violation of his rights under the First and Fourteenth Amendments and 42 U.S.C. § 1983. (Filing No. 3 at ¶ 23).

On October 27, 2008, OPS moved for summary judgment.  OPS argued that Galvan abandoned his protected speech claim, and failed to establish a *prima facie* case of age, sex, or race discrimination under Title VII or the ADEA.  (*See* Filings Nos. 30-31). OPS argued that Jordan failed to demonstrate that his speech was protected or addressed any matter of public concern, or that his speech was a motivating factor in his termination, and that he had abandoned his claims of sex and race discrimination and failed to establish a *prima facie* case of age discrimination. (*See* Filings Nos. 33-34).

On December 15, 2008, this Court granted OPS's Motion for Summary Judgment relating to all David Galvan's claims, dismissing all of Galvan's claims with prejudice. (Filing No. 53).  In the same Order, the Court granted OPS's Motion for Summary Judgment relating to Patrick Jordan's race, sex, and age-discrimination claims, dismissing those claims with prejudice. (Filing No. 53).  At that time, the Court reserved ruling on Jordan's

2

First Amendment claim, pending oral argument, requested by OPS. (Filing No. 35). The Court heard oral arguments on December 29, 2008.

## 2. Undisputed Factual Background[1]

OPS hired Jordan as a Senior System Engineer on May 10, 2004. (Filing No. 34, Ex. A3). Jordan was an "at will" employee. (Filing No. 34, Ex. A6, and Filing No. 31, Ex. A3, Deposition of Dr. Sandra Hodges ("Hodges Dep.") 28:7-29.11). When OPS hired Jordan, he was fifty-three years old, and he was fifty-three years old when OPS terminated his employment. (Filing No. 34, Ex. A1, Deposition of Patrick Jordan ("Jordan Dep.") 8:19-23).

On November 3, 2004, Jordan and his former co-worker, Galvan, went to the office of Dr. Thomas McClung, OPS Executive Director of Information Services, and Jordan presented McClung with a document raising several issues regarding McClung's professional conduct and management of employees, as well as allegations of mismanagement of funds in the OPS budget that were allocated for certain contracts. (Filing No. 34, Ex. A12). Specifically, Jordan accused McClung of violating the OPS harassment policy and a rule governing OPS business procedures. (Filing No. 34, Ex. A12). On December 12, 2004, Jordan again raised these issues in an email to an OPS School Board member. (Filing No. 34, Ex. A16). Jordan contends that these acts constituted speech on matters of public concern and deserve First Amendment protection.

In his deposition, McClung stated that he viewed Jordan's accusations as "inflammatory" and "incorrect." (Filing No. 34, Ex. A8, Deposition of Dr. Thomas McClung ("McClung Dep.") 111:24-112:11). According to OPS, the meeting between Jordan and

---

[1] The Court has construed the facts in a light most favorable to Jordan.

McClung was confrontational. While Jordan disputes the characterization of the meeting as "confrontational," he does not dispute OPS's assertion that during the course of this meeting, Jordan told McClung, "Everyone hates you."

McClung reported his meeting with Jordan to Dr. Sandra Hodges, OPS Assistant Superintendent of Human Resources. (McClung Dep. 64:5-16; 115:8-21). Hodges initiated an investigation, and subsequently informed Jordan that he had "demonstrated extremely poor judgment by presenting the allegations to Dr. McClung rather than to his supervisors or to Human Resources . . . Mr. Jordan['s] . . . actions in this matter have been totally unprofessional and unacceptable." (Filing No. 34, Ex. A17). Hodges concluded that Jordan's actions were "confrontational" and "threatening," and that he sought to use his confrontation with McClung to secure the return of another employee whose employment OPS had previously terminated.[2] (Hodges Dep. 115:16-116:4; 120:13-121:19). She recommended that the OPS School Board terminate his employment, and on January 19, 2005, the School Board accepted her recommendation and terminated Jordan's employment. (Hodges Dep. 84:3-11). OPS, therefore, has offered evidence that its decision to terminate Jordan's employment was based on Hodges's assessment that Jordan was confrontational and threatening when meeting with McClung, and that Jordan's confrontation with McClung was motivated by a desire to secure the reinstatement of another employee.

---

[2] OPS alleges that Jordan's confrontation with McClung was motivated by a desire to persuade him to re-hire Gary Anderson. OPS originally hired Anderson as a Technical Support Coordinator in its Information Management Services Department. Anderson's employment was terminated by the OPS Board of Education in January 2005 upon the recommendation of Hodges. This Court dismissed Anderson's claims against OPS in *Anderson v. OPS,* Case No. 8:06CV332. *(See* Case No. 8:06CV332, Filing No. 69).

4

Jordan acknowledges that Hodges recommended to OPS that he be fired because she truly believed that his actions were confrontational, threatening, and motivated by a desire to facilitate a former employee's reinstatement. (Def. Brief at ¶ 31, Filing No. 33; Plaintiff Brief at ¶ 31, Filing No. 44). Jordan does not contend that his termination was based on anything other than Hodges's good-faith recommendation. Jordan simply contends that Hodges's assessment was inaccurate.

## STANDARD OF REVIEW

In the context of a summary judgment motion, the Court's function is to consider the evidence and determine whether the moving party is entitled to judgment as a matter of law. The proponent of a motion for summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)). In response to the proponent's showing, the opponent's burden is to "come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (quoting Fed. R. Civ. P. 56(e)). A "genuine" issue of material fact is more than "some metaphysical doubt as to the material facts." *Id.*

In considering a motion for summary judgment, a court views the facts in the light most favorable to the nonmoving party, and gives that party the benefit of all reasonable inferences. *McNary v. Schreiber Foods, Inc.*, 535 F.3d 765, 768 (8th Cir. 2008)(ADA);

*Fields v. Shelter Mut. Ins. Co.*, 520 F.3d 859, 863 (8th Cir. 2008)(Title VII and 42 U.S.C. § 1981).

## ANALYSIS

Public employees do not shed all their constitutional rights during the course of their employment. *See Connick v. Myers*, 461 U.S. 138, 142 (1983)("[A] State cannot condition public employment on a basis that infringes the employee's constitutionally protected interest in freedom of expression."). "So long as employees are speaking as citizens about matters of public concern, they must face only those speech restrictions that are necessary for their employers to operate efficiently and effectively." *Garcetti v. Ceballos*, 547 U.S. 410, 419 (2006).

The record shows that Jordan was speaking out on matters of public concern. Some of the issues he raised in his meeting with McClung concerned alleged irregularities in the school's expenditures and budget, as well as alleged violations of OPS policies. Notably, the Supreme Court has held that public school employees are "the members of a community most likely to have informed and definite opinions about school expenditures." *Id.* at 419 (internal quotations omitted). There can be no doubt that the Constitution protects public school employees who voice their concern over possible fraudulent expenditures in their schools' budgets.

This constitutional protection, however, is not limitless. "To succeed on a First Amendment retaliation claim, a public employee plaintiff must show: (1) he engaged in protected speech, that is, speech on a matter of public concern; (2) his interest as a citizen in commenting on the issue outweighs the public employer's interest in promoting efficient

6

public service; and (3) his speech was a motivating factor in the action taken against him." *Bailey v. Dept. of Elementary and Secondary Educ.*, 451 F.3d 514, 518 (8th Cir. 2006).

It might well be argued that Jordan's interest as a citizen in commenting on the issues he raised in his meeting with McClung did not outweigh his employer's interest in promoting efficient public service, *e.g.*, OPS's interest in ensuring that employees' complaints about their supervisors be directed to the Human Resources office or to a superior management official rather than made directly to the supervisors in a confrontational manner.[3]  It is unnecessary to engage in this weighing analysis, however, because Jordan has not come forward with any evidence to show that his protected speech was a factor that motivated OPS's decision to terminate his employment.

OPS has demonstrated that Hodges recommended Jordan's termination because she believed that Jordan was confrontational and threatening toward McClung and that Jordan's meeting with McClung was motivated by Jordan's desire to secure the reinstatement of a former employee.  Jordan "admits that Hodges believed and felt these things." (Plaintiff Brief ¶ 31, Filing No. 44, responding to Def. Brief ¶ 31, Filing No. 33). Jordan has presented no evidence that his termination by OPS was based on anything except Hodges's good-faith assessment of his conduct and her recommendation that he be terminated based on that assessment.

Whether Hodges's conclusions were fair and accurate characterizations of Jordan's conduct is not pertinent to this Court's constitutional analysis.  This Court must simply determine whether Jordan's protected speech was a motivating factor in OPS's decision

---

[3] *E.g.*, "Everyone hates you."

7

to terminate his employment. There is no evidence that Jordan's protected speech was a factor that motivated OPS to terminate him.

Although Jordan did engage in protected speech, he has not come forward with evidence to demonstrate that his protected speech was a factor that motivated OPS to terminate his employment, or that OPS's proffered reason for his termination was pretextual. His constitutional claim, therefore, will not survive OPS's Motion for Summary Judgment.

## CONCLUSION

For the aforementioned reasons, Jordan's claim based on constitutionally protected speech will be dismissed with prejudice.

IT IS ORDERED:

1. Defendant Omaha Public Schools' Motion for Summary Judgment (Filing No. 32) is granted; all of Patrick Jordan's claims are dismissed with prejudice;

2. The Pre-Trial Conference set before Magistrate Judge Gossett on January 9, 2009, is cancelled;

3. Defendant Omaha Public Schools' Motion in Limine (Filing No. 48) is denied as moot; and

4. A separate Judgment will be entered.

DATED this 31st day of December, 2008.

BY THE COURT:

s/Laurie Smith Camp
United States District Judge